<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLYN SPOONER,<br><br>                           Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                           Defendant. | Civil Action No. 20-8613 (SDW)<br><br><br>**OPINION**<br><br><br>August 5, 2021 |

**WIGENTON,** District Judge.

      Before the Court is Plaintiff Carolyn Spooner's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Meryl L. Lissek's ("ALJ Lissek's") denial of Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Lissek's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

I.   **PROCEDURAL AND FACTUAL HISTORY**

   A.   **Procedural History**

On or about January 20, 2017, Plaintiff filed a Title II application for Disability Insurance Benefits based on her "disabling condition."[1] (Administrative Record ("Record" or "R.") 157–58.) The Social Security Administration denied Plaintiff's application on April 25, 2017, and again on reconsideration on October 26, 2017. (R. 96–101, 105–07.) Plaintiff filed a written request for a hearing on November 8, 2017, and ALJ Lissek held a hearing on December 11, 2018, at which Plaintiff and a Vocational Expert ("VE") testified. (R. 34-66.) In a written decision dated January 30, 2019, the ALJ found that Plaintiff was not disabled. (R. 12-27.) Plaintiff's request that the Appeals Council review ALJ Lissek's decision was denied on May 11, 2020, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) Plaintiff now requests that this Court reverse the Commissioner's decision and declare that Plaintiff is entitled to disability beginning February 1, 2016.

   B.   **Factual History**

Plaintiff is fifty-seven years old and currently lives in Lafayette, New Jersey, with her husband and adult daughter. (R. 157, 20.) The record demonstrates that Plaintiff met with a number of doctors between 2017 and 2018 seeking treatment for the medical issues that are now associated with her disability claim, most notably chronic obstructive pulmonary disease ("COPD"). (R. 17; D.E. 12 at 5.) The following is a summary of the evidence with regard to her claim, which alleges disability beginning on February 1, 2016.

---

[1] The record contains conflicting dates as to the precise date of Plaintiff's application, however, that discrepancy is irrelevant for purposes of this opinion. (*Compare* R. 157 *with* R. 15.)

2

In 2017 and 2018, Plaintiff was evaluated by a number of doctors with regard to physical and mental impairments. (R. 20–22.) Prior to 2017, the only record evidence of Plaintiff's alleged disability are medical reports from the period 2010 to 2012 and a CT scan from April 2016 that indicated the presence of "COPD changes within the lungs." (*See* R. 277–301.)

In 2017, Plaintiff saw Dr. Shari Flowers ("Dr. Flowers") on multiple occasions, primarily for evaluation and treatment of COPD with multiple symptoms, but Plaintiff also reported experiencing fainting episodes. (R. 20–21.) During these examinations, Plaintiff had a normal mood and affect, was pleasant and alert, and was not in distress. (*Id.*) She exhibited poor respiratory effort, and in March 2017, Dr. Flowers assessed chronic bronchitis, sinusitis, and an upper respiratory infection. (D.E. 12 at 8.) Dr. Flowers indicated that her "main concern for the patient is her nicotine dependence and COPD," and advised her to quit smoking and to return to treatment with her pulmonologist. (*Id.*) A May 2017 examination was in line with prior exams, with Dr. Flowers diagnosing COPD with acute exacerbation with continued overall noncompliance, as Plaintiff had not consulted a cardiologist as recommended for her fainting episodes, and had stopped taking low-dose prednisone due to irritation and rashes. (*Id.* at 9.) Subsequent examinations and scans in July 2017 and November 2017 offered no evidence of valvular or active pulmonary disease. (*Id.*)

In December 2017, Plaintiff met with Rakesh K. Garg, M.D. ("Dr. Garg"), her treating pulmonologist. (*Id.*) As was the case in prior examinations, Plaintiff was in no distress, exhibited some respiratory difficulty, and otherwise exhibited normal physical, neurological, and psychological findings. (*Id.* at 10.) At that time, a pulmonary function test ("PFT") did reveal that Plaintiff's lung capacity was low. (*Id.*) A chest scan in February 2018 revealed "extensive COPD changes within the lungs, nonspecific subpleural nodules, and pleural-parenchymal scarring."

(D.E. 12 at 10.) An April 2018 examination yielded largely the same results as earlier evaluations, with Dr. Garg assessing Plaintiff with COPD with acute exacerbation and prescribing Prednisone. (*Id.*)

Further evaluations of the Plaintiff in both July and October 2018, by Dr. Garg and Newton Urgent Care, respectively, yielded diagnoses of COPD exacerbation, similar to earlier assessments. (*Id.* at 10–11.) A chest x-ray performed during her visit to Newton Urgent Care showed no issues with Plaintiff's heart or lungs. (*Id.*)

In March 2017, Plaintiff was also evaluated by a consultive examiner, Dr. Alexander Hoffman ("Dr. Hoffman"). (*Id.* at 11.) Plaintiff reported that she continued to smoke, albeit at a reduced rate, having unsuccessfully tried various methods to quit. (*Id.*) She also reported using a nebulizer and an inhaler daily, and that she experienced fainting spells and Raynaud's syndrome. (*Id.*) In addition, she reported suffering from depression and anxiety for years, but had not received any mental health treatment. (*Id.*) Dr. Hoffman's exam was in line with Plaintiff's prior physical exams: no distress, some respiratory difficulty, and generally normal physical and neurological findings. X-rays of Plaintiff's chest revealed signs of COPD but no acute disease, and a pulmonary function test was "normal." (*Id.*)

In April 2017, Plaintiff was evaluated by consultive psychologist Avanente Tamagnini, PhD. ("Dr. Tamagnini"), at the request of the state agency. (*Id.* at 12.) Plaintiff reported depression and exhibited an anxious affect, despite having friends and getting along well with her family. (*Id.*) She also reported that, on a daily basis, she makes coffee, does some chores, cleans, shops, and cooks dinner. (*Id.*) Dr. Tamagnini also determined that Plaintiff could manage her own funds. (*Id.*) Dr. Tamagnini diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. (R. 21.)

4

Four state agency medical consultants also provided assessments of Plaintiff, based on her medical records. (D.E. 12 at 12–13.) In March 2017, Dr. Caroline Shuback ("Dr. Shuback") reviewed Plaintiff's medical records, determining she had the residual functional capacity to perform light work, with certain limitations. (*Id.*) In October 2017, Dr. Mary Ann Nicastro ("Dr. Nicastro"), another state agency physician, also reviewed the record and affirmed Dr. Shuback's findings. (*Id.* at 13.) In April 2017, Dr. Leslie Williams ("Dr. Williams") completed a psychiatric review technique form and a mental residual functional capacity ("RFC") assessment, finding Plaintiff had mild or moderate limitations regarding certain activities. (*Id.* at 12–13.) Dr. Amy Brams ("Dr. Brams"), another state agency consulting psychologist, affirmed the opinion of Dr. Williams. (*Id.* at 13.)

### C. Hearing Testimony

At the administrative hearing, ALJ Lissek heard testimony from Plaintiff and Vocational Expert Tanya Edghill ("VE Edghill"). (R. 36–66.) Plaintiff testified that she lives with her husband and adult daughter, and gets along well with others, including her co-workers when she worked. (D.E. 12 at 13; R. 20.)

Plaintiff testified that the primary medical problem keeping her from working is her constant shortness of breath, and that walking worsens this condition. (R. 20.) She testified that she smokes, but does not feel physically any different when she smokes and that her doctors did not tell her that quitting would help her condition. (*Id.*) Plaintiff also testified that she suffered from multiple other medical ailments, including difficulty sleeping, dizziness, panic and anxiety, depression, and Raynaud's syndrome, which causes her fingers to tingle and become cold and numb, making it difficult to manipulate objects. (*Id.*)

She testified that she can walk fifty feet before becoming short of breath, and that she can lift and carry 10-15 pounds. (*Id.*) In addition, Plaintiff testified that she is able to perform her own daily activities of living, such as bathing, dressing, shopping, cleaning, and driving (although getting in and out of the car causes her dizziness), and that she tries to go outside once a day for a walk to help manage her depression. (*Id.*) Plaintiff also testified that her primary care doctor has prescribed her medications for her mental health, including Xanax and Lexapro. (R. 49.)

During the hearing, the ALJ described to VE Edghill a series of hypothetical people, including one of the Plaintiff's age, education, and work experience, who could: "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk up to six hours in an eight-hour day; climb stairs and bend occasionally; use their hands for fingering and handling frequently; work in an environment with no more than occasional high humidity, temperature extremes, and only occasional contact with undue amounts of dust or known pulmonary irritants; [would have] no contact with unprotected heights or dangerous machinery; understand, remember, and carry out instructions; have occasional contact with supervisors; work in proximity to coworkers, but not together with them; and would be permitted to be off-task five percent of an eight-hour day and absent once per month." (D.E. 12 at 28.) VE Edghill testified that this hypothetical person would be able to perform Plaintiff's prior work, which she classified as a waitress and salesclerk. (*Id.*)

II.     **LEGAL STANDARD**

    **A. Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination."  *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131

(E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged" 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as

work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.   DISCUSSION**

A.

On January 30, 2019, ALJ Lissek issued a decision concluding that Plaintiff was not disabled since February 1, 2016 ("alleged onset date"). (R. 12–27.) At Step One, the ALJ found

that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 17.) At Step Two, the ALJ found that since the alleged onset date, Plaintiff suffered from COPD "hypothyroidism, anxiety, depression, Raynaud's phenomenon, myalgia, and recurring" fainting spells. (*Id.*) All of these ailments are classified as severe impairments. (*Id.*)

At Step Three, the ALJ concluded that Plaintiff's impairments do not "meet or medically equal the severity" of the listings for these respective impairments in 20 CFR Part 404, Subpart P, Appendix I (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (*Id.*)

In considering Plaintiff's COPD, the ALJ determined that it did not meet the applicable criteria under Listing 3.02, as it had not "resulted in the prescribed number of exacerbations or complications requiring hospital intervention, nor were there pulmonary function tests in the medical record that reflected such values equivalent to the listing." (*Id.* at 17.) In addition, the ALJ found that Plaintiff's hypothyroidism did not "meet or medically equal" any relevant listed impairment. (*Id.* at 18.)

ALJ Lissek also found that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06, as they did not result in at least one "extreme" or two "marked" limitations in any area of functioning. (*Id.*) With regard to the severity of Plaintiff's mental impairments, the ALJ found that Plaintiff only has moderate limitations as concerns understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing herself. (*Id.*) For example, Plaintiff can prepare meals, go to doctor's appointments, take medications, get along with others (including medical providers), manage her funds, and handle self-care and hygiene. (*Id.*)

At Step Four, ALJ Lissek determined that Plaintiff has the residual functional capacity to perform "light work as defined in 20 CFR 404.1567(b)," with additional limitations regarding

11

levels of exertion, use of her hands, work conditions and environment, contact with supervisors and co-workers, and expected absences. (R. 19.) The ALJ also noted that although Plaintiff's determinable impairments could "reasonably be expected" to cause her symptoms, her statements regarding the severity and impact of these symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (R. 21.)

ALJ Lissek also considered and weighed the medical opinions and notes of Plaintiff's treating physicians, Dr. Flowers, Dr. Hoffman, and Dr. Tamagnini, as well as the opinions of the state agency medical consultants, Dr. Williams, Dr. Brams, and Dr. Nicastro. (R. 21–22.) The ALJ gave little weight to the opinions of Drs. Williams and Brams, as they were based on the examination of an incomplete record and did not involve the actual examination of Plaintiff. (*Id.*) The opinion of Dr. Nicastro was given good weight, as it was "generally consistent" with evidence in the medical record and Plaintiff's testimony. (R. 22.) The opinion of Dr. Tamagnini was afforded great weight, as it was also "consistent" with the medical record and Plaintiff's testimony. (*Id.*)

At Step Five, ALJ Lissek determined that Plaintiff is "capable of performing past relevant work as a Waitress and a Salesclerk." (*Id.*) This work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 CFR 404.1565 and 416.965). (*Id.*) ALJ Lissek appropriately relied on VE Edghill's testimony in reaching her determination that Plaintiff is capable of performing past relevant work because in comparing Plaintiff's "residual functional capacity with the physical and mental demands of the work," Plaintiff would be "able to perform it as actually performed." (*Id.*) Although Plaintiff has "functional limitations because of her mental and physical ailments," they are "fully accommodated" within her residual functional capacity. (*Id.*)

B.

On appeal, Plaintiff seeks reversal of the Commissioner's decision and asserts that (1) ALJ Lissek's decision errs at Step Three in not concluding the Plaintiff's condition met or equaled Listing 3.02 for chronic respiratory orders; (2) ALJ Lissek's RFC finding is not supported by substantial evidence; and (3) ALJ Lissek's finding that Plaintiff can perform past relevant work is not based on substantial evidence. (*See* D.E. 11 at 15–21.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff contends that ALJ Lissek's decision errs at Step Three in not concluding Plaintiff's condition met or equaled Listing 3.02 for chronic respiratory orders. (*Id.* at 15.) Plaintiff claims that ALJ Lissek did not "properly consider" either the severity of her pulmonary disease and emphysema, or a potentially relevant pulmonary function study performed in December 2017, in her Step Three analysis. (*Id.* at 17.) However, ALJ Lissek specifically addressed these issues in her opinion, citing extensively to Plaintiff's physical and mental health records and test results from April 2016 through October 2018, including the pulmonary function study performed December 19, 2017. (*See* R. 20–21.) As Plaintiff failed to present sufficient medical evidence to establish she met the requirements of Listing 3.02, this Court finds that ALJ Lissek correctly determined that Plaintiff's condition did not meet or equal Listing 3.02 for chronic respiratory disorders. (R. 17.)

Second, Plaintiff argues that ALJ Lissek's RFC finding is not supported by substantial evidence, stating "there is simply no analysis of the PFT studies undertaken by her treating pulmonologist as it relates to her RFC finding." (D.E. 11 at 19.) As noted above, ALJ Lissek did in fact take into account the March 2017 and December 2017 PFT studies conducted by Dr. Hoffman and Dr. Garg, respectively, explicitly discussing them in the context of her RFC finding.

13

(*See* R. 20–21.) Moreover, the ALJ took Plaintiff's physical and mental impairments into account when assessing the Plaintiff's RFC for light work, limiting her work conditions in terms of exertion, allowable tasks, environment, and interaction with co-workers. (*See* R. 19, 22.) In light of the above, this Court finds that ALJ Lissek's RFC finding is supported by substantial evidence, and provides an opportunity for meaningful judicial review.

Finally, Plaintiff argues that ALJ Lissek's finding that Plaintiff can perform past relevant work is not based on substantial evidence. This challenge, based primarily on VE Edghill's hearing testimony, contends that the ALJ used various hypothetical individuals in her questioning of the VE "in order to have the VE testify to a desired result." (D.E. 11 at 20.) ALJ Lissek asked VE Edghill to evaluate a hypothetical individual whose characteristics and credible limitations were those of the Plaintiff, and in response the VE testified that the individual could perform past work as a waitress or sales clerk. (R. 63–64.) Since the VE based her testimony on relevant sources such as the Dictionary of Occupational Titles and her own extensive field experience, the testimony constitutes substantial evidence with regard to the ALJ's decision. (*See* D.E. 12 at 29.)

It should also be noted that the Plaintiff does not challenge the decision of the ALJ as to her former job as a sales clerk, but only raises the issue as it relates to her former work as a waitress. (*See* D.E. 11 at 20–21.) Even if the ALJ had somehow erred at Step Four by including Plaintiff's former work as a waitress, the inclusion of her former work as a sales clerk, subject to the limitations described in ALJ Lissek's decision, would still stand and Plaintiff still would not be disabled under the law. Therefore, Plaintiff has the ability to perform past work.

IV.     **CONCLUSION**

This Court finds that ALJ Lissek's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct.  Therefore, the Commissioner's determination is **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties